BRACY DEESE, EMPLOYEE, PLAINTIFF v. CHAMPION INTERNATIONAL CORPORA-
TION, EMPLOYER (SELF-INSURED), DEFENDANT AND SEDGWICK JAMES OF THE
CAROLINAS, ADMINISTRATOR, DEFENDANTS

No. COA97-1581

(Filed 3 November 1998)

1. **Workers' Compensation— review of deputy commissioner's determination—credibility issues**

    The Industrial Commission abused its discretion in a workers' compensation action by reversing the deputy commissioner without addressing credibility issues raised by plaintiff's testimony and surveillance videotapes which were critical factors relied upon by the deputy commissioner.

2. **Workers' Compensation— disability—determination— post-injury earning capacity**

    The relevant factor in assessing disability is the plaintiff's post-injury earning capacity rather than actual wages earned.

Appeal by defendants from Opinion and Award entered 4 September 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 September 1998.

*John A. Mraz, P.A., by John A. Mraz, for plaintiff-appellee.*

*Robinson & Lawing, L.L.P., by Jane C. Jackson and Jolinda J. Steinbacher, for defendants-appellants.*

WALKER, Judge.

On 4 August 1989, plaintiff injured his back lifting a box of plugs while employed at defendant's paper mill. Defendant admitted liability and a Form 21 agreement was approved by the Industrial Commission on 16 January 1990.

DEESE v. CHAMPION INT'L CORP.

[131 N.C. App. 299 (1998)]

Since the injury, plaintiff has had four back surgeries. The first two were performed in 1989 by Dr. Steven Stranges and the last two were performed by Dr. Todd Chapman of the Miller Orthopaedic Clinic. Following the last surgery, Dr. Chapman continued to see plaintiff in 1992 and 1993. Dr. Chapman released plaintiff in October 1993 to return as needed. He determined that plaintiff had a thirty percent impairment of the spine and that he could not return to his job with defendant or any job requiring manual labor or prolonged standing.

In addition, beginning on 1 September 1992, plaintiff was treated by Dr. Joshua Miller of the Southeastern Pain Clinic who prescribed various medications for plaintiff's back pain. At that time, plaintiff also began treatment with Dr. Walter J. Lawless, a clinical psychologist, who concluded that plaintiff suffered from depression and anxiety. On 5 March 1993, due to his improvement, plaintiff was released from Dr. Lawless' care.

In February 1994, plaintiff applied for a motor vehicle dealership license so he could start a used car sales business with his brother. The business operated as Deese's Auto Sales from February through May 1994 when plaintiff signed over his interest in vehicles owned by Deese's Auto Sales to his wife, Judith Deese. She then opened a used car business under the name of J & J Auto Sales which continued to do business until late 1994 or early 1995. Mr. William Gregory, a private investigator hired by defendants, conducted surveillance and recorded it on videotapes which showed plaintiff on the premises of J & J Auto Sales on a number of occasions during August and September 1994.

On 12 December 1994, defendants filed a Form 24 to terminate plaintiff's benefits which they supported with documents and videotapes of plaintiff's activities. Plaintiff filed no response to the application to terminate his benefits and on 13 February 1995, the Commission entered an order terminating benefits as of 15 February 1994.

After a hearing, the deputy commissioner found that plaintiff was actively engaged in the sale of automobiles at J & J Auto Sales; however, he did not report any of this activity to either defendant-employer or their servicing agent. In addition, the deputy commissioner's findings included the following:

17. The investigator, William Gregory, conducted surveillance and recorded it on videotapes which show plaintiff present

at J & J Auto Sales on every occasion surveillance was conducted there in 1994. The videotapes depict plaintiff inspecting vehicles, including looking under the hood, talking with customers, and working in the office. At times, plaintiff was the only person present on the premises, clearly indicating he was running the business that day.

18. As shown on the videotapes, and as supported by David Goode's testimony, the work at Deese's Auto Sales was not strenuous and was consistent with plaintiff's capabilities. David Goode testified that he was working at Deese's Auto Sales because he himself could no longer work at Deese's Bait due to a back problem and lifting restrictions. Goode was able to do the sales work at the auto dealership.

19. In addition to the surveillance, William Gregory spoke with David Goode over the phone to ask about the price of a vehicle on J & J's lot. Mr. Goode said he would need to check with the owner and identified Bracy Deese as the owner of the dealership. Mr. Gregory also visited J & J Auto Sales and spoke with Mr. Goode, who told him he worked for Bracy Deese.

20. The business records of J & J Auto Sales also indicate plaintiff's involvement. On October 15, 1994, plaintiff signed a check from the business account of J & J Auto Sales to Linda's Auto Sales for "cars". Notations on other checks for the account dated July 5, 1994, indicate plaintiff was involved in purchasing other items for the business, specifically a motor and a jeep.

21. At the hearing, plaintiff denied involvement in auto sales, but could not explain why he secured a dealership license in his name. The plaintiff also had attempted to operate these businesses without the knowledge of the defendants. Plaintiff never mentioned either business to the defendants or to any of his treating physicians until after he learned that his activities had been videotaped.

22. The videotapes are significant in that they shed light on the plaintiff's veracity. The plaintiff's attempts to operate these businesses without the knowledge of the defendants, coupled with the contradiction of his testimony by the videos are circumstances the undersigned finds significant in assessing the plaintiff's propensity for truth. In view of the documentary evidence and videotape evidence, the undersigned finds plaintiff's testimony that he was not involved in vehicle sales to be unbelievable.

DEESE v. CHAMPION INT'L CORP.

[131 N.C. App. 299 (1998)]

Based on these findings, the deputy commissioner concluded that as of February 1994, defendants had shown that plaintiff regained his wage earning capacity and were permitted to terminate his benefits as of 15 February 1994.

On appeal, the Commission, with one commissioner dissenting, rejected the findings of the deputy commissioner and awarded plaintiff temporary total benefits. Included in the findings of the Commission are the following:

17. The Deputy Commissioner in this matter found plaintiff's testimony regarding his association with his brother's car business and his later investment in said business was not credible. The Deputy Commissioner found that plaintiff had attempted to keep his involvement with the car business hidden from defendant and that plaintiff had never mentioned his involvement to any of his treating physicians until after he learned that his activities had been videotaped.

18. Despite the Deputy Commissioner's first hand observations of the witness at hearing, the Full Commission finds that plaintiff's testimony regarding his association with his brother's car business and his later investment in said business to be credible for the following reasons: plaintiff informed Dr. Lawless that he had been spending some time with his brother at his brother's car dealership; plaintiff's statements to Dr. Lawless are corroborated by statements to Dr. Lawless by plaintiff's wife; Ms. Donna Kropelnicki, the rehabilitation nurse assigned by defendant to plaintiff's case, had knowledge of the fact that plaintiff was attempting to get out of his house and that he had been frequently visiting his brother's business, and; it was only after Ms. Kropelnicki reported these activities to defendant that the later videotapes were taken.

[1] Defendants contend the Commission erred in improperly disregarding the credibility determination of the deputy commissioner and failing to give reasons for the reversal of that determination.

Upon appeal from a deputy commissioner, the Commission is not required to receive new evidence and may decide the case on the record. N.C. Gen. Stat. § 97-85 (1991). Ordinarily, the Commission is the sole judge of the credibility of witnesses. However, when the Commission decides a case by only reviewing the record, this Court has held the deputy commissioner is in a better position to assess the

credibility of the witnesses because "he is a first hand observer of the witnesses whose testimony he must weigh and accept or reject." *Sanders v. Broyhill Furniture Industries,* 124 N.C. App. 637, 639-640, 478 S.E.2d 223, 225 (1996), *disc. review denied,* 346 N.C. 180, 486 S.E.2d 208 (1997) (*quoting Pollard v. Krispy Waffle,* 63 N.C. App. 354, 357, 304 S.E.2d 762, 764 (1983)); *See Taylor v. Caldwell Systems, Inc.,* 127 N.C. App. 542, 544, 491 S.E.2d 686, 689 (1997).

When the Commission makes findings reversing a deputy commissioner's credibility determination, those findings are reviewable by this Court and will be sustained if supported by competent evidence. The Commission must make findings, "showing why the deputy commissioner's credibility determination should be rejected." *Sanders,* 124 N.C. App. at 641, 478 S.E.2d at 226.

Here, after receiving evidence and viewing surveillance videotapes, the deputy commissioner determined plaintiff was involved in the auto sales business beginning with his obtaining a dealer license in February 1994. The deputy commissioner then found plaintiff's testimony that he was not involved in auto sales to be unbelievable.

In finding the plaintiff's testimony to be credible, the Commission based its determination on statements made by the plaintiff to his psychologist, Dr. Lawless, and to his rehabilitation nurse, Ms. Kropelnicki. However, plaintiff's statement that he was "spending some time" at his brother's car dealership was, according to testimony at the hearing, made to Dr. Lawless in 1992, as was the corroborating statement made by plaintiff's wife to Dr. Lawless. In addition, the statement made by plaintiff to Ms. Kropelnicki that he was visiting his brother's car lot was made in early January 1994. We fail to see how these statements were relevant to the deputy commissioner's determination that plaintiff was not credible as he did not become involved in the auto sales business until February 1994. The Commission likewise failed to address the credibility issues raised by plaintiff's testimony and the surveillance videotapes, two critical factors that the deputy commissioner relied on in making her credibility determination.

In reversing the deputy commissioner without addressing these credibility issues, the Commission abused its discretion. For this reason, we reverse the Opinion and Award of the Commission and remand to the Commission for consideration of the deputy commissioner's findings of credibility.

LEONARD v. LOWE'S HOME CTRS.

[131 N.C. App. 304 (1998)]

**[2]** Next, defendants contend the Commission should have applied the standard required by N.C. Gen. Stat. § 97.2(9) of plaintiff's wage earning capacity rather than his actual wages.

In order for plaintiff to continue to receive temporary total disability he must be "disabled." Disability is defined as the "incapacity because of injury to earn wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (1991).

The plaintiff's post-injury earning capacity rather than his actual wages earned is the relevant factor in assessing the disability. *McGee v. Estes Express Lines*, 125 N.C. App. 298, 300, 480 S.E.2d 416, 418 (1997); *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 730, 403 S.E.2d 548, 550, *disc. review denied*, 329 N.C. 505, 407 S.E.2d 553 (1991).

The Opinion and Award of the Commission is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Chief Judge EAGLES and Judge MARTIN, John C., concur.