Upon review of the competent evidence of record, the Full Commission, upon reconsideration of the evidence, REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
Based on the pre-trial agreement executed by the parties and filed in the record of evidence at the deputy commissioner's hearing, the Full Commission accepts the following:
 STIPULATIONS
a. Leslie Samuels is the employee;
b. Bartlett Nuclear is the employer;
c. The employer is self-insured and the servicing agent is AIG Claim Services, Inc.;
d. An employer-employee relationship existed between the employer and the employee;
e. The average weekly wage is to be determined on the I.C. Form 22, included in Plaintiff's Exhibit A;
f. The alleged date of accident is August 13, 1997;
g. The issues to be heard are:
 (1) Whether or not the North Carolina Industrial Commission has jurisdiction in this matter; and if so
 (2) Whether or not the plaintiff suffered a compensable accident and injury arising out of her employment; and,
 (3) What benefits is the plaintiff entitled if she is found to have a compensable accident and injury.
h. Stipulated Documents and Exhibits included Plaintiff's Exhibit A, consisting of Industrial Commission Forms, Plaintiff's Exhibit B, consisting of medical records of the plaintiff, and Plaintiff and Defendant's written discovery responses.
 ***********
Based on the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a resident of Lincolnton, North Carolina, and has worked for defendant since 1995. Plaintiff's husband has been an employee of defendant since 1993. Defendant initially mailed plaintiff an application for employment to her residence in Lincolnton, North Carolina. Plaintiff completed the application and mailed it from North Carolina to Massachusetts.
2. Defendant is a Massachusetts corporation with its principal place of business in Massachusetts. Defendant does business in North Carolina by recruiting employees from North Carolina and also by placing employees in North Carolina to work at nuclear power plants. Defendant is in the business of supplying labor to assist nuclear power plants with refueling and other special projects. The nature of this work is sporadic and the employees would generally be hired to work for the duration of a particular contract or project. Depending upon the project and the contract with the nuclear facility, defendant's employees would be covered by workers' compensation insurance provided by defendant or under the policy for the nuclear plant.
3. Plaintiff's first position with defendant was to work at a nuclear power plant in North Carolina. This assignment was received when plaintiff, while in North Carolina, received a telephone call from Eric Bartlett with defendant, asking her whether she wanted to work at the Shearon-Harris Nuclear Power Plant near Raleigh, North Carolina. Plaintiff worked at this plant for about 2 months until the project was finished.
4. Plaintiff worked for defendant at other locations in North Carolina, Virginia, New Jersey, and Massachusetts.
5. Plaintiff was injured on August 13, 1997, while in the employ of defendant while working in Massachusetts. The injury occurred when plaintiff fell while descending stairs and struck her back on the stairs. Plaintiff immediately reported the incident and her employer took her, on the date of injury, to North Adams Regional Hospital in North Adams, Massachusetts.
6. Plaintiff received the job offer by receipt of a telephone call from Eric Bartlett with defendant advising her of the available position in Massachusetts and asking whether she would accept the position. Plaintiff received the telephone call while she was in Lincolnton, North Carolina. The defendant told the plaintiff the hourly rate of pay, and plaintiff accepted the position on the telephone. Defendant indicated that plaintiff had been hired, and plaintiff then traveled to Massachusetts.
7. North Adams Regional Hospital records state that plaintiff was seen on August 13, 1997, with complaints of low back pain sustained during a fall in which plaintiff slipped on stairs, landed on her buttocks, and hit her back against the stairs. Plain film x-rays were taken which showed a tilt of the lumbar spine to the right but were otherwise unremarkable. The diagnosis was back contusion and back pain. Plaintiff was given medication and advised to place ice on her back and to decrease activity depending on what she could tolerate.
8. Lucian Pravati with defendant testified that defendant had no information on which to deny the fall. Rather, defendant's information was that the fall had occurred.
9. Defendant placed plaintiff on light duty until the job in Massachusetts was over.
10. Plaintiff next accepted a position with defendant in Hope Creek, New Jersey. Plaintiff had medications for her back from the doctor in the emergency room in Massachusetts. Plaintiff saw a doctor in the emergency room at Salem Hospital in New Jersey.
11. Medical records in evidence indicate that plaintiff went to the emergency room at Lincoln Medical Center, Lincolnton, North Carolina, on September 1, 1997, and was examined by Kevin Reese, M.D., for problems with her left knee. She was diagnosed with left knee arthritis and was prescribed vicodin for inflammation.
12. Plaintiff reported that she saw Susane Habashi-Ahigian, M.D., in November-December 1997 when she returned to North Carolina.
13. In January 1998, plaintiff saw Gregory Hardigree, M.D., for complaints with her left knee. Dr. Hardigree recommended arthroscopic surgery for suspected lateral meniscal tear, but the surgery was postponed until plaintiff's anticipated return from a position with the defendant in Virginia.
14. Dr. Hardigree performed arthroscopic surgery on plaintiff's left knee on May 5, 1998, in Gastonia, North Carolina. Scoping of the left knee failed to reveal the suspected meniscal tear; rather, the physician reported softening of the cartilage and formation of plica. Dr. Hardigree debrided the articular surface of the patella and excised the pathological lateral gutter plica.
15. Plaintiff was not out of work due to her injuries prior to her knee surgery because defendant had placed her on light duty. Plaintiff did not work after the knee surgery on May 5, 1998.
16. The knee surgery did not correct plaintiff's complaints, which were related to plaintiff's back.
17. Plaintiff treated with Karen M. Rivas, M.D., an orthopaedist. Medical records indicate that plaintiff saw Robert Reid, M.D, for numerous medical conditions and that Dr. Reid referred plaintiff to Dr. Rivas.
18. Dr. Rivas' records reflect that plaintiff was complaining of left leg pain and saw Dr. Hardigree, who performed the knee surgery. Plaintiff then continued to complain of pain over her left hip and down the left leg, and Dr. Reid sent her back to Dr. Hardigree, who opined that the pain was secondary to a tight muscle. Dr. Reid then asked Dr. Rivas for a second opinion.
19. Dr. Rivas' records reflect tightness of the muscles of both right and left lower extremities, left greater than right, with numbness over the L5-S1 nerve distribution on the left, and degenerative joint disease of both sacroiliac joints. On June 5, 1998, Dr. Rivas placed plaintiff in physical therapy two times a week for three weeks and requested an MRI, which was performed.
20. Dr. Rivas interpreted the MRI to show some sacroiliac joint arthritis with some degenerative changes. On July 7, 1998, Dr. Rivas indicated that plaintiff could continue to perform sedentary work (10 pound maximum lifting with occasional lifting and carrying of articles up to 5 pounds) with climbing only 5% of shift, walking up to 50% of the shift, standing up to 50% of shift, and sitting up to 50% of shift.
21. Dr. Rivas' August 13, 1998, records report that plaintiff was sent for an FCE and recommended that plaintiff undergo a work hardening program. Dr. Rivas anticipated that plaintiff should be able to return to her regular job, apparently after completing the work hardening program.
22. The FCE dated August 7, 1998, found that plaintiff could perform light physical demand activities as defined in the Dictionary of Occupational Titles. The therapist reported that she did not have a job description from defendant; plaintiff, however, described her position as requiring continuous standing and walking, frequent stair and ladder climbing, frequent squatting, crouching and kneeling, occasional crawling, continuous reaching, and frequent lifting and carrying up to 50 pounds. Plaintiff was not able to perform these tasks, and the therapist recommended work hardening with the objective of meeting these goals.
23. Medical records from Optima Therapies indicate that the adjuster for plaintiff's claim had indicated that no decision had been made on plaintiff's claim and, until a decision was made, to proceed with treatment and charge it to Blue Cross, defendant's group health insurer.
24. Plaintiff was in work hardening program from August 17, 1998, through September 22, 1998, when a post work hardening FCE was performed. The FCE states that plaintiff's employment should not cause her to exceed the weight limits of the FCE. Plaintiff's work capabilities was in the light to medium physical demand level as defined by the Dictionary of Occupational Titles. In comparing plaintiff's abilities with the plaintiff's description of the duties of her position with defendant, the FCE reveals that plaintiff cannot lift the required 50 pounds and cannot perform the occasional crouching or rare squatting. The opinion of the physical therapist was that, despite more than a month of work conditioning, plaintiff could not perform her former work duties with defendant and recommended that she pursue alternative work options. The Commission finds that plaintiff was unable to return to her job with defendant.
25. Dr. Reid referred plaintiff to Steven W. Dibert, M.D, a neurologist. Dr. Dibert noted a history of persistent posterior left thigh pain extending from the back to the posterior aspect of the left knee. EMG and NCV tests were negative.
26. Dr. Dibert testified that plaintiff has a chronic back strain which he was treating with medication. He stated that the injury was not so disabling that plaintiff could not work, but she should look for work that did not place as much strain on her back. Dr. Dibert believed that plaintiff should seek a sedentary job, with a 10 pound lifting restriction, where she would stand less than a couple of hours per day.
27. The medical records in evidence include a report dated August 15, 1999, from Dr. Dibert indicating that plaintiff had reached maximum medical improvement and retained a 2 percent disability to the lumbar spine with limitations of no lifting more than 10 pounds and no standing continuously for more than 1 hour.
28. Dr. Dibert expressed that the accident of August 13, 1997, when plaintiff slipped when coming down stairs at work, could or might have cause her chronic back strain. Dr. Dibert expressed the opinion that Plaintiff would continue to need medical examinations, medications, and treatment.
29. In her Brief to the Full Commission, plaintiff stated that the only injury which she contends is casually connected with her compensable accident is her back strain and that she does not contend that the knee injury is casually related to her accident.
30. The greater weight of the evidence is that plaintiff sustained an injury by accident to her back on August 13, 1997, while in the employ of defendant in Massachusetts. Plaintiff sustained a contusion, strain, or sprain to her low back in the lumbar sacroiliac area, resulting in a chronic back strain. The back injury has produced tightness in the muscles in her left leg and left leg pain. This condition was misinterpreted to involve a left knee injury. Plaintiff's compensable injury does not include damage or harm to the physical structure of the left knee.
31. In her Brief to the Full Commission, plaintiff requests temporary total disability from April 30, 1998, to August 15, 1999, as well as six weeks of benefits based on a 2% rating for permanent partial disability to the back.
32. Plaintiff was totally disabled from her employment from April 28, 1998, when she last worked for the employer on light duty, until she reached maximum medical improvement on August 15, 1999.
33. Plaintiff has a 2% impairment rating to the back for the compensable injury.
34. Based on the Form 22, stipulated by the parties, plaintiff earned $15,374.45 in the 52 week period prior to her injury which would produce an average weekly wage of $295.64. Plaintiff's compensation rate is $197.99.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction over plaintiff's claim for compensation. N.C. Gen. Stat. § 97-36; Murrayv. Ahlstrom Ind. Holdings, Inc., 131 N.C. App. 299, 506 S.E.2d 724
(1998).
2. Plaintiff sustained an injury by accident, which consists of a back strain, in the course and scope of her employment. N.C. Gen. Stat. § 97-2(6).
3. As a result of her compensable back injury, plaintiff is entitled to temporary total disability compensation at the rate of $197.99 per week, from April 28, 1998, and continuing through and including August 15, 1999. N.C. Gen. Stat. §§ 97-2(8), 97-29. Plaintiff is also entitled to six weeks of compensation at the rate of $197.99 for the 2% loss of use rating to the back. N.C. Gen. Stat. § 97-31(23).
4. Plaintiff is entitled to payment of all medical treatment reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability, for the compensable back injury. N.C. Gen. Stat. §§ 97-25,97-25.1.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff total temporary disability benefits at the rate of $197.99 per week from April 28, 1998, until and including August 15, 1999. Defendant shall also pay plaintiff $197.99 per week for six weeks for her 2 % disability rating to the back. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to reasonable attorney fee approved herein.
2. To the extent that the same was reasonably designed to diagnose, cure, give relief or lessen the period of disability, defendants shall pay the reasonable medical expenses incurred by plaintiff as a result of her compensable back injury, subject to the limitations made in N.C. Gen. Stat. § 97-25.1.
3. A reasonable attorney fee in the amount of twenty-five (25) percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid in a lump sum from plaintiff's AWARD.
4. Defendants shall bear the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER